Hitchcock, J.
These cases are of some considerable importance to the parties immediately interested, but of still more importance to the public, as belonging to a class of cases with which, within a few years past, the docket of the court of common pleas, as well as of the Supreme Court, has been crowded. They are important, too, as presenting questions upon which, as is well known, the members of this court have differed in opinion, and which have been at different times differently decided. And further, upon the final decision of these questions depends the title to many millions in value, of real property, within this state.
It is to be observed that these complainants claim dower in premises for the conveyance of which they united with their husbands while living, in the execution of deeds, thereby granting or releasing all rights or claim of dower in the premises so conveyed. There is no complaint that any false or fraudulent representations were made to induco them to sign these deeds; no pretense that it was done under the influence of fear, threats, or coercion; no charge but that it was done fairly and voluntarily. But it is claimed that the officers who took the acknowledgment of these deeds, have not made the proper certificates, and therefore that these women are not bound or precluded by their own act. They did all they could do to divest themselves of their contingent interest. They executed deeds according to the forms of law; they appeared before the proper magistrate to acknowledge the *538 execution, and did acknowledge the execution of these deeds. Their intention manifestly and undoubtedly was to divest themselves of all interest in the premises conveyed, but through the ignorance and inadvertence of the officer, as it is claimed, this intention is defeated. Such is the claim, and upon such a privilege as this, these petitioners como into this court to claim dower.
Under such circumstances it is a question of grave importance, how far a court should bo influenced by technical Objections to a certificate of acknowledgment. We are bound by the law, and must enforce it, regardless of consequences. The law upon the subject of the execution and acknowledgment of deeds in this state has been, from the date of the ordinance of 1787, regulated by positive enactment. In giving a construction to those several enactments, it is-the duty of the court to give such construction, so far as it can be done, as will consist with the ends of justice. .
Wo suppose that the principles involved in these cases are settled in the case of Chesnut v. Shane’s Lessee, decided at the present term. In that case wo felt ourselves compelled to overrule a number of cases heretofore decided by this court, and which are specifically referred to. After the decision of the case above referred to, it miifht bo doomed unnecessary to report the cases now under consideration. But considering that the questions involved are important, considering that they have caused much agitation not only with the bar, but with the people of the state, wo have thought it advisable to make public the reasons which have induced us to come to the conclusions at which we have arrived.
Before entering upon an examination of these cases, however, it seems to mo proper to refer to the legislation of the territory and of the slate, upon the subject of dower, and of the execution and acknowledgment of deeds.
The first law upon the subject of dower to which I shall refer, is the ordinance of July 13, 1787, “for the government of the territory northwest of the river Ohio.” This ordinance has ever been considered as the organic law of the territory northwest of the Ohio, as much so as is the constitution of a state the organic-law of that slate. In the second paragraph it is provided, “that the estates of both resident and non-resident proprietors in said territory, dying intestate, shall descend to and be distributed among their children, and the descendants of a deceased child,-in *539 equal parts; the descendants of a deceased child or grandchild, to take the share of their deceased parent, in equal parts, among *them; and where there shall be no descendants or children, then in equal parts to the next of kin, in equal degree; and among collaterals, the children of a deceased brother or sister of the intestate, shall have, in equal parts, among them, their deceased parent’s share; and there shall in no case be a distinction between kinsmen of the whole and half-blood; saving in all cases to the widow of the intest,ate, her third part of the real estate for life, and one-third part of the personal estate; and this law relative to descent and dower shall remain in full force until altered by the legislature of the district.” Such was the law upon the subject of.dower, as prescribed .in the organic law of the territory, nor -was this law changed during the existence of the territorial government. By the terms of this law, of what was a widow to be endowed? Unquestionably, as it seems to me, of the real estate of which her husband died seized, and nothing more. The reasons for this opinion, are fully stated in the case of Allen v. McCoy, 8 Ohio. 470-472.
In the case of Betts v. Wise and others, 11 Ohio, 217, it is admitted by the court, that such is the proper construction of the ordinance, but it is insisted that there was a common-law right of dower, by which this provision of the ordinance must be controlled, or in accordance with which it should be construed. Now I am not about to controvert the fact, that in countries where the common law prevails, there is a recognition of the right of a widow to have dower, in some shape, in the estate of her husband. But this common-law right, like any other principle of the common law, may be changed by positive legislative enactment. In the State of Ohio, dower has never been claimed as a common-law right, unless under the ordinance. . It has ever been recognized and regulated by statute.
In order to justify a court in appealing to the principles of common law, in giving a construction to a statute, those principles should have previously prevailed in the country for which the statute is enacted. Now what was the situation of .the territory northwest of the Ohio, at the time of the ^enactment of the ordinance of 1787, and what were the laws by which the people of the territory were governed ? Almost the entire territory was a wilderness, inhabited by Indian tribes, with the exception of *540 some few tracts of land in the neighborhood of Detroit, Yincennes, and some other places, which had been ceded by the Indians to tho French. The territory, it is true, was within the limits of the United States as defined by the treaty with Great Britain of 1783, but it had been claimed by different states of the Union, and these claims had not been relinquished until within a short period of the time when the ordinance of 1787 was adopted. It may be assumed as a fact, that within the territory now constituting the State of Ohio, there was not a white man at tho date of the ordinance, subject to the jurisdiction of the United States. There might have been some few Indian traders, and were undoubtedly some whites who had been made captives by the Indians, and who had been adopted into, and had become members of their different tribes. It was not until the treaty of Greenville, in 1796, that the Indian title to any of the land within the territory was ceded to the United States.
Under such circumstances, it is not too much to say, that at or previous to the time of the adoption of the ordinance of 1787, the common law was not the law of tho Northwestern Territory. It did not operate upon the Indians. They were governed by their own peculiar laws. It did not operate upon the French inhabitants. Few as they were, they never recognized its binding force. And there were none of the “Teutonic stock,” upon whom it could operate.
Such was the situation, when Congress, having it in contemplation that this country would soon be settled by a different race, adopted the ordinance for the government of those who' should thereafter become inhabitants of tho territory. In this ordinance they prescribed the rule as to dower, and this rule, as before remarked, was not changed during the existence of the territorial government.
For these reasons, it seems to me that the court were mistaken *in holding, as was held in the case of Betts v. Wise, that under the ordinance of 1787, a widow was dowable of all the lands of which her husband was seized during the coverture. This I state, however, as my own opinion, not as the opinion of the court.
On January 19, 1804, and after the organization of the state government, the general assembly passed “an act regulating the right of dower.” Chase’s Stat. 395. By section 1 of this act it is *541 provided, “That the widow shall be entitled, during her life, to the use of one-third part of all the real property that her husband was seized of during coverture, unless she shall have joined with her Misbandin the conveyance.”
On February 12, 1805, the general assembly passed another law upon the same subject, in section 1 of which it is enacted, “ That the widow of any person dying intestate, or. otherwise, shall be endowed of the full and one equal third part of all the lands, tenements, or other real estate, of which her husband was seized, as an estate of inheritance, at any time during the coverture, to which she shall not have relinquished her right of dower, by deed duly executed and acknowledged; and she shall, in like manner, be endowed of one-third part of all the right, title, or interest, that her husband, at the time of his decease, had in any lands or tenements, held by bond, article, lease, or other evidence of claim,” etc. Chase’s Stat. 472.
It will be seen that this latter statute makes a distinction between legal and equitable estates, which distinction was not made in the former. By this last act, the widow is entitled to dower, in any estate of inheritance of which her husband was seized during the coverture, while she is to bo endowed in no equitable interost except in such of which he may die seized. By the former act she was barred of her dower, if she had “joined with her husband in the conveyance ” of the premises ; by the latter she is not barred, unless she had relinquished her dower, “by deed duly executed and acknowledged.”
*The next act to which I shall refer is the act of January 26, 1824, entitled “an act to regulate dower.” Chase’s Stat. 1314. This act is not materially different from that of 1805, except that there is no provision that a widow shall be barred of her dower by having united with her husband in the execution of a deed conveying the premises. The reason for this exception I suppose to be that a similar provision is incorporated in the respective laws prescribing the mode of executing and acknowledging deeds. This law of 1824 still remains in force.
As under the laws of 1804 and 1805, a widow was barred of dower, provided she had joined with her’husband in the execution and acknowledgment of a deed conveying the premises; and as the same principle is contained in the present law for the execution and acknowledgment of deeds, it becomes necessary to ex *542 amine these laws. And here it may be proper to state that the only controversy which has ever arisen upon this subject is as to the form of the certificate of acknowledgment. It is therefore to the requisition of the law upon this particular subject that I shall principally direct my attention.
The first law in force in the territory, relative to the conveyance of land, is the ordinance of 1787. This provided that deeds should be signed, sealed, and delivered by the grantor, and attested by two witnesses; provided the same should be acknowledged, or the execution proved and recorded, “within one jmar after proper magistrates, courts, and registers shall be appointed for that purpose.”
The ordinance did not prescribe the manner in which husband- and wife should convey an estate in which she had an interest. This was first done by an act adopted by the governor and judges from the Pennsylvania statutes, and published on January 26, 1795. Chase’s Stat. 186.
This act authorizes the husband and wife, when desirous to dispose of or convey the estate of the wife, or her right in any lands, tenements, or hereditaments, she being twenty-one years of age and more, to execute a deed conveying the same, *and requires them, “after such execution, to appear before one of the judges of the general court, or before any justice of the court of common pleas of and for the county where such lands, tenements, or hereditaments shall lie, and acknowledge said deed or conveyance; which judge of the general court, or justice of the court of common pleas, shall and he is hereby authorized and required to take such acknowledgment. In doing whereof he shall examine the wife separate and apart from her husband, and shall read or otherwise make known the full contents of such deed or conveyance to the said wife; and if, upon such separate examination, she shall declare that she did voluntarily, and of her own free will and accord, and as her act and deed, deliver the said deed or conveyance, without any coercion or compulsion of-her said husband, every such deed or conveyance shall be and is hereby declared to be good and valid in law to all intents and purposes, as if the said wife bad been sole, and not covert, at the time of such sealing and delivery—any law, usage, or custom to the contrary in any wise notwithstanding..”
Section 2 then provides “that the judge or justice taking such *543 acknowledgment shall, under his hand and seal, certify the same upon the back of the deed or conveyance.”
Now, it will be seen that this act requires the judge or justice to take the acknowledgment of a deed or conveyance of husband and wife, and to certify 11such, acknowledgment ” upon the back of the instrument. Tho form of the certificate is not given. The duty of the magistrate in taking this acknowledgment is preseribed. He is required to examine tho wife separate and apart from her husband; he is required to read or otherwise make known to her the contents of the deed or conveyance, and if, upon suph separate examination, “sho shall declare,” etc., such deed is declared to be good and valid in law. But it is not expressly provided that the officer in his certificate shall state that he made such separate examination, or that he read or made known the contents of the deed or conveyance. It is expressly made his *duty to perform these acts, but it is not expressly made bis duty to certify that ho performed them. All he is required to certify is the acknowledgment.
This act of 1795 was repealed by an act of the general assembly of Ohio, of February 12, 1805, and an act was then passed entitled “an act providing for the execution and acknowledgment of deeds.” Chase’s Stat. 484. Section 2 of this act is almost an exact transcript of sections 1 and 2 of the act of 1795. It differs only in this respect, that the acknowledgment required may be taken before a judge of the Supreme Court, a judge of the court of common pleas, or a justice of tho peace.
Tho act of 1805 was repealed by an act upon the same subject, passed January 30, 1818. Section 1 of this act prescribes the manner in which deeds for the conveyance of the lands of a man or unmarried woman shall be executed and acknowledged.
Section 2 is as follows: “When a husband and wife, she being eighteen years or upward, shall, within this state, execute any deed, mortgage, or other instrument for the conveyance or incumbrance of the estate of tho wife, or her right of dower in any lands, tenements, or hereditaments whatsoever, such deed, mortgage, or other instrument of writing, shall be signed and sealed by tho husband and wife, and the signing and sealing thereof bo acknowledged by them in the presence of two subscribing witnesses, who shall attest tho acknowledgment of such signing and sealing, and also be acknowledged before a judge of the court of common *544 pleas, or a justice of the peace, and the judge or justice taking such acknowledgment shall examine the wife separate and apart from, her said husband, and shall read or otherwise make known to her the contents of said deed, mortgage, or other instrument of writing, and if, upon such examination, she shall declare that she voluntarily and of her own free will and accord, without any fear or coercion of her husband, did, and now doth, acknowledge tho signing and sealing thereof, the said judge or justice shall oertify the *same, together with the acknowledgment of the husband, on the same sheet, upon which such deed, mortgage, or other instrument shall be printed or written, subscribing his name and affixing his seal to said certificate,” and deeds so executed are declared to be good and valid in law.
The phraseology of this section is somewhat different from that of tho former laws cited. But still there is no express requisition that the magistrate shall certify that he examined tho wife separate and apai't from her husband, nor that he read or made known the contents of tho deed or conveyance to her. It would seem to bo necessary, however, that he should certify that she “declared that she voluntarily and of her own free will and accord, without any fear or coercion of her husband,” acknowledged the signing and sealing of tho instrument. He is not expressly required to certify as to any acts or declarations of himself, but merely as to the declarations of the woman.
Section 2 of the act of February 24, 1820, providing for the proof and acknowledgment of deeds, is an exact transcript of section 2 of the act of 1818, before cited. Chase’s Stat. 1139.
By these several acts, a married woman is made capable of conveying real estate by joining with her husband in the execution of a deed, and if such deed is executed according to the forms of law, it must be subjected to the same rules of construction as would be a deed executed by a man or a feme sole. To make such deed available an acknowledgment before some proper officer was indispensable, and a certificate of such acknowledgment must be attached to the deed. But the form of this certificate was not prescribed, nor was it expressly prescribed that it should contain anything but the simple acknowledgment. This defect, if defect it may be called, is remedied by the act of February 22, 1831, in which it is prescribed that “such officer,” that is, the officer taking the acknowledgment, “ shall certify such examination and *545 declaration of the wife, together with the acknowledgment as aforesaid, on snch deed, mortgage, or Mother instrument of writing; and subscribe his name thereto.” Chase’-s Stat. 1843.
Under these laws, it would no doubt have been proper for the officer taking the acknowledgment of a deed executed by husband and wife, to have certified that he examined the wife separate and apart from her husband, that he read or otherwise made known to her the contents of the deed or conveyance, and that she acknowledged that she signed, sealed, and delivered as her deed, the same voluntarily, of her own free will and accord, without the • fear of coercion of her husband, and that she was still satisfied herewith. But was this indispensably necessary? If it was, then I apprehend that few deeds of this character can be found which were executed previous to the act of 1831, by which any estate or interest of the wife was conveyed. As a matter of fact, we know that this form of certifying was rarely, if ever adopted. Nor was there any uniform mode of certifying adopted. In the cases now under consideration, we have no less than eight or ten deeds before us, and in no two of them is the certificate of acknowledgment the same. Nor is it strange that there should have been this diversity, when we consider the circumstances of the case. It must be remembered that at the time of the' adoption of the ordinance of 1787, the territory now constituting the State of Ohio was a wilderness, destitute of any population, except of Indian tribes. Shortly-after this time, settlements commenced in the Ohio Company’s purchase, and in Symmes’ purchase. It was not, however, until after the treaty of Greenville, in 1795, that there was much increase of population. From that period, emigration increased, and settlements were commenced in other parts of the territory. The emigrants came from every state in the Union, as well as from different parts of Europe. In the transaction of business, a population thus brought together could not but bo influenced more or less by the habits and laws of the countries from which they emigrated. Those who were appointed or elected magistrates, and whose duty it was to take the acknowledgment *of deeds, would, in certifying the same, be more likely to be controlled by the forms adopted in the states from whence they came, than by the particular law under which they were called to act. And such was the fact; almost every variety of certificate was adopted. In most cases, it was certified that *546 the wife was examined separate and apart from her husband; in very few thát the deed was read or its contents made known to her. In some cases it was certified that she voluntarily acknowledged the deed or conveyance to have been executed of her own free will and accord, without the fear or coercion of her husband; in others, that she acknowledged the instrument to be her voluntary act and deed, and in others that the instrument was acknowledged according to law. And all these different forms of certifying were at the time supposed to be sufficient, and in accordance with the law, as construed by those whose duty it was to carry it into execution.
In this state of things, land passed from hand to hand with as much facility as goods and chattels. In truth, in some parts of the state the former was considered of less value than the latter, and a judgment debtor felt himself relieved, if the officer holding an execution, would pass by his personal property, and levy the same on his lands. In the-Ohio Company’s purchase in the military districts, and in the Connecticut Western Eeserve, lands in the hands of the original proprietors were. considered as more articles of merchandise or traffic.
No question was ever made in this court within my recollection, as to the validity of these certificates of acknowledgment, until the presentation of the case of Brown v. Parran, at the December term, 1827, and which is reported in 3 Ohio, 140. This case was fully and ably argued by counsel and carefully considered by the court. The propriety of sustaining conveyances where the certificate of acknowledgment was informal was fully discussed, and the court came to the conclusion that a certificate was sufficient if it contained a substantial enumeration of the acts required *by the statutes, though the words be not followed. And further, that an inveterate practice for a series of years should not be departed from. In other words, that in the examination of such certificates, a liberal, not a strict construction should be given to the law requiring them. In coming to this conclusion, there can be no doubt the court were much influenced ■by the practice which had so long prevailed, and it was right and proper it should be so.
In that case the judge, in giving the opinion of the court, says : “ It must appear expressly or by irresistible inference, from the '.language of the certificate, that the wife was acquainted with the *547 nature of the deed, and that she was examined separate and apart from her husband.” No doubt it is well that this should appear, but the ease of Brown v. Farran did not present a point of this kind necessary to be decided, nor was any question made as to this part of the acknowledgment. The certificate was in these words: “State of Ohio, Hamilton county, ss. Before me, the undersigned, a justice of the peace within and for said county, personally appeared David Brown and Catherine Brown, his wife, who having been made acquainted with the contents, and being examined separate and apart, the wife from the husband, acknowledged the above indenture to be their voluntary act and deed, for the uses and purposes therein named. Before me,” etc.
The objections taken to this acknowledgment were, that it did not appear that the petitioner did either sign or seal the deed; that it did not appear that she acknowledged the signing and sealing before the witnesses or before the justice, and that it did not appear that she acted without the fear or coercion of her husband.
But the court held that the certificate was sufficient. The wife acknowledged the instrument to be her voluntary act and deed. If her deed, then she must have signed and sealed it, for without her signature and seal it could not have been her deed. If it was her voluntary deed, she must have executed it without the fear or coercion of her husband.
*1 assented to the principles settled in this case, and think they should never have been departed from. Any other decision would have shaken the titles to many millions of property, which had been acquired by the then present holders by fair and bona fide purchase. A contrary decision, it is true, might have enabled many widows to reclaim property which had been, by their consent, sold and conveyed for an ample consideration, or it might have enabled them to enforce claims for dower in premises, for the conveyance of which they had joined with their husbands, and done all that on their part could be done to make such conveyance effective. And if such conveyances are not held to bo effective, it is for the s®le reason that an officer whose duty it was to take an acknowledgment of the conveyance has omitted some technical formality in reducing the certificate of acknowledgment to writing.
Another reason why I assented-to the principle of this decision, *548 and why I am still willing to adhere to those principles, is, that I am unwilling to adopt any rule of construction to a statute, or to recognize any principle as law which will encourage any portion of the community, whether male or female, in fraud or dishonesty.
It is a common saying that dower, as well as life and liberty, is a favorite of the' common law. This is true; and where a woman is justly and equitably entitled to dower, where she has not joined with her husband in the conveyance of his lands, or where she has been induced to join in such conveyance by force, fraud, or coercion, no member of this or any other court can be more ready than I shall be to give her relief. But where she has voluntarily joined in such conveyance, the case is different. While the common law favors dower, it abhoi’s fraud and dishonesty; and whether it be honest for a woman who has voluntarily joined her husband in the execution of a deed conveying his land, thereby relinquishing, or attempting to relinquish, her right of dower, to set up a claim to dower after his death *in the same land, must be left to every one to decide for him or herself.
After the decision in Brown v. Farran, no other case came before the court in which the validity of a certificate of acknowledgment was called in question, until the December term, 1834, when the case of Connell v. Connell was decided. 6 Ohio, 353. The decision of this case induced -the passage of what has been called the curative law of March 9, 1835. Swan’s Stat. 269. Of this case, and those following it, I shall say nothing at present, the same having been fully commented upon in the ease of Chesnut v. Shane’s Lessee, before referred to, and decided at the present term.
Having made these remarks upon the general subject, I will now proceed to the examination of the particular, cases now before the court for consideration.
The first is the case of Margaret Ruffner v. Bernard McLenan et al.
The deed, by which Joseph Euffner and Margaret his wife, the now complainant, conveyed the premises in which dower is demanded, bears dató July 19, 1815, more than thirty years since. This deed was executed under the law of 1805. It was acknowledged on the 24th day of August, of the same year in which it *549 bears date. And the form of the certificate of acknowledgment is as follows:
“Tho State of Ohio, Hamilton county. Before me, the under signed, a justice of the peace, within and for said county, came personally Joseph Ruffner and Margaret Ruffner, wife of said Joseph Ruffner, the above-named grantors, who, being examined separately, acknowledged the above deed of conveyance to be their voluntary act and deed, for the uses and purposes therein mentioned, as the law directs. In testimony whereof,” etc.
This certificate is in most respects like the ono before the court in the case of Brown v. Farran, 3 Ohio, 152; It shows a separate examination, and a voluntary acknowledgment of the deed. It does not show, however, that the *wife • was made aequainted with the contents of the deed, but does show that the acknowledgment was taken “as the law directs.” So far as respects the fact that the certificate does not contain a statement that the deed was read and its contents made known, it has been shown by an examination of tho statutes, that it was not expressly made the duty of the officer to certify any such fact, and in the case of Chesnut v. Shane’s Lessee, it was held that it was not necessary. But had it been necessar}1', the defect is cured by the law of 1835. It seems to the court this comes within tho principles decided in the case of Brown v. Farran, and the bill is therefore dismissed.
The second case in order is the case of Rhoda Phillips v. David T. Disney.
The Joill is in the usual form of a petition for dower, which is claimed in the premises therein named. The answer sets up, in bar, a deed from complainant and her husband, Jabish Phillips, who died in 1837, dated March 3, 1798, by which she released her dower. This deed was not acknowledged until August 12, 1811, and tho certificate is as follows: “Came Jabish Phillips, and Rhoda Phillips his wife, the within grantors, and acknowledged tho within conveyance to be their voluntary act and deed, executed for tho uses and purposes therein contained, agreeably tó the statute in sueh cases made and, provided.”
The first ground of defense assumed by counsel for defendant is that, by tho ordinance of 1787, a widow was entitled to dower only in the lands of which - the husband died seized, and that the land in which dower is now demanded was conveyed in 1798, before any change had been made in tho law as prescribed in the ordi *550 nance. Subsequent to the dower acts of 1804 and 1805, by. which provision is made that the wife shall be endowed of all the lands of which the husband was seized during the coverture, it is insisted that Jabish Phillips was not seized of the lands in controversy.
There can bo no doubt, I apprehend, but that, by the deed of 1798, all the interest of Jabish Phillips became vested in his *grantco, from the delivery of the deed. And it is fair to presume that this deed was delivered on the day of its date. By the law then in force, no acknowledgment was necessary to the validity of a deed made by a man or unmarried woman. Such acknowledgment constituted no part of the deed, although it was necessary in order that the instrument might be recorded. It was not until the enactment of the law of 1818, that the acknowledgment was made necessary to the validity of such deed. In order to bind a married woman, however, an acknowledgment was necessary from 1798.
Unless, then, under the ordinance of 1787, a widow was entitled to dower in all the lands of which her husband might have been seized during coverture, this ground of defense assumed by defendants’ counsel is conclusive of the case. I have already ox-pressed my own opinion upon the subject, and it is unnecessary to say more. In the case of Betts v. Wise, 11 Ohio, 219, this court held that even under the ordinance, a widow was entitled to be endowed as at common law. Not because such was the provision of that instrument, but because there was something peculiar to the Teutonic race on the subject of dower. It is admitted by the court, however, that it was within the legitimate province of the law-making power to change the law of dower as well as the law upon any other subject. I have already assigned the reasons why, in my opinion, the court mistook the law in this decision. The ordinance of 1787 was enacted, not so much for a people then inhabiting the territory over which it was to operate, as for the government of those who might thereafter become inhabitants of that territory. It contained a complete system upon the subject of descents and the distribution of real and personal estate, saving to the widow of a decedent one-third part of the real or personal estate descended—a system, however, which might be changed by subsequent local legislation. Until changed, it was the law of the territory. And being the law of the territory, *551 all who should subsequently become ^residents of the territory, whether of the Teutonic or any other race, must be controlled by ik A majority of the court, however, are not disposed to controvert the law, as laid down in the case of Betts v. Wise.,
The next ground of defense assumed by counsel is, that by the law of 1824, “ regulating dower,” all laws upon the same subject are repealed without.any saving clause; and it is insisted that inasmuch as the premises in controversy were conveyed previous to the enactment of that law, there was no seizin in the husband, after the law of 1824, to which a right of dower could attach. There is certainly much ingenuity and great force in the argument submitted upon this point, but we are not prepared to say that the position can bo sustained. There can, as it seems to me, be no doubt that the general assembly have the power to change the law of dowei’, and so to change it that a widow may be endowed of one-half or more of the real estate of which her husband shall be seized after the change and during coverture, or that she may be endowed only of the estate of which he may die seized. And such law would be effective and operative in all cases, except such in which the dower right had become vested by the death of the husband previous to the enactment of the law. But the law of 1824, as has been already seen, made no change upon the subject of dower. It secured to the widow the same rights which were secured to her by the law of 1805. In this case, it was 'a mere re-enactment of the law .of 1805—a continuance of that law. The moment one ceased to operate, the other took effect. It was not the intention of the general assembly, by the repealing clause of the act of 1824, to change the rights of persons upon this subject. Although the repeal of a statute, inflicting pains, penalties, or forfeitures will operate to remit such pains, penalties, or forfeitures, incurred during the existence of the law, notwithstanding similar pains, penalties, or forfeitures are inflicted by the statute containing the repealing clause, still such is not the effect where-mere civil rights are concerned. Such was the decision of this court in the case *of Lessee of Mitchell v. Eyster, 7 Ohio, 257, pt. 1. We are satisfied that the law'was correctly settled in that case, and hold that if the complainant had an inchoate right of dower in the premises, under the statute of 1805, that right was not affected by the repeal of this statute by the law of 1824.
*552 The next ground of defense assumed by defendants’ counsel is, that the complainant’s right of dower is barred by the deed executed in 1798 and acknowledged in 1811, and this presents the question as to the sufficiency of the certificate of acknowledgment. It is in these words : “ Came Jabish Phillips and Rhoda Phillips, his wife, the within grantors, and acknowledged the within conveyance to be their voluntarily act and deed, executed for'the uses and purposes therein contained, agreeably to the statute in such case made and provided.” This deed was executed in 1798 under the law of 1795. By its execution, the title of Phillips became vested in his grantee. The complainant joined with her husband in the execution, but still if she had any interest in the land, contingent or vested, that interest did not pass until the deed was acknowledged in 1811. This acknowledgment was under the law of 1805.
It is supposed to be defective, because it does not show that the wife was examined separate and apart from, her husband; that the contents were made known to her; that she signed and sealed the same voluntarily, without the fear or coercion of her husband. It has been already shown, by examination of the act of 1805, that the officer taking the acknowledgment, was not expressly required to certify any of these matters. All that the statute expressly required that he should certify, was the acknowledgment. But I will again recur to the statute. The manner of executing and acknowledging deeds by husband and wife is found in section 2 of the act “providing for the execution and acknowledgment of deeds,” passed January 12, 1805. Chase’s Stat. 484.
This section authorizes husband and wife, when inclined to dispose of her land, or any interest she may have therein, *to join in the execution of a deed conveying the same, and further authorizes them, “after such execution, to appear before a judge of the Supreme Court or court of common pleas, or justice of the peace, and acknowledge the same, which judge or justice of the peace is hereby required to take such acknowledgment; in doing whereof, he shall examine the wife separate and apart from her husband, and shall read or otherwise make known the full contents of such deed or conveyance to the said wife; and if, upon such separate examination, she shall declare that she did voluntarily, and of her own free will and accord, seal, and, as her act and deed, deliver the said deed or conveyance without any coercion or compulsion of her *553 husband, every such deed of conveyance shall be, and the same is hereby declared to be, good and valid in law, to all intents and purposes, as if the said wife had been a sole and not covert, at the timó of such sealing and delivery, and the judge or justice taking such acknowledgment shall, under his hand and seal, certify the same upon the back of the deed or conveyance.”
Now, it will not be denied that this statute'may bear the construction .contended for by complainant’s counsel, but it is not the necessary or natural construction. The first part of the section provides that the husband and wife shall apirear before a judge or justice of the peace, after the execution of a deed by them jointly, “and acknowledge the same,” and requires the judge or justice “to take such acknowledgment.” It then goes on to prescribe the duty to be performed by the officer taking the acknowledgment, and provides that if certain declarations are made by the wife, the deed or conveyance shall bo as available as if the woman had been sole and not covert. Next comes the provision as to the certificate, in these words: “ The judge or justice taking such acknowledgment shall, under his hand and seal, certify the same,” etc. The acknowledgment is to be certified, and if this is done, the statute is literally complied with. It may, at least, be presumed in favor of the officer, that he would not make such certificate until he had done *and performed all that the statute required of him to do and perform. And shall this court say that a certificate thus conformable to the statute, furnishes no evidence that the statute has been complied with ? It seems to me not.
It may be said, however, that in the case of Brown v. Farran, the court held it to be necessary that a bertificate should show a separate examination, and that the contents of the deed were made known to the wife. True, it was so stated by the judge in delivering the opinion of the court, but no question of the kind was then before the eourt for consideration. The principle settled in that case was, that nothing more was necessary in an acknowledgment than that it should substantially appear that the requisitions of the law had been complied with.
In the case before the court, and now under consideration, the officer taking the acknowledgment has certified that the same was done “agreeably to the statute in such case made and provided.” If so, all the requisitions of the law were complied with. There was a separate examination, the contents of the deed were mads *554 known to the wife, and she made all the necessary declarations and acknowledgments. But it is claimed that the case of Meddock v. Williams, 12 Ohio, 377, is an authority to prove that an officer must certify specifically all the acts done, and that it will not be sufficient for him to certify in general terms that tho law has been complied with.
A majority of tho court, as now constituted, are not satisfied ■ with the decision in the case referred to, and the same has been overruled in the case of Chesnut v. Shane’s Lessee, before referred to. By our system an important trust is reposed in those officers who are authorized to take tho acknowledgment of deeds. Their duties are prescribed in the several statutes upon tho subject matter upon which they are called to act. But still no form is prescribed in which acknowledgments taken before them shall be Certified. It is to be presumed they are acquainted with tho law under which they act. It is to be presumed they will comply with *the requisitions of that law ; and when they certify that tho law has been complied with, that an acknowledgment has been made and taken in pursuance of it, it seems to a majority of the court that such certificate should be taken, as true, and held to be sufficient; hence we are induced to come to this conclusion in some degree, and perhaps in no small degree, by a knowledge of the fact that in early times, if not at later periods, this mode of certifying acknowledgments was very frequently adopted. And Such practice shows the contemporaneous construction put upon these statutes by those whose duty it was to carry them into execution.
After full and mature consideration, a majority of tho court are of opinion that the complainant, Rhoda Phillips, is barred of her dower by joining with her husband in the execution of the deed set up in the answer, bearing date March 23, 1798, and acknowledged on August 12, 1811.
The bill is therefore dismissed.
The next in order is the case of Rachel Meddock v. William Tift.
The bill in this case was filed in 1814, and by it dower is Claimed in the premises described in the bill by tho complainant, as the widow of Abijah Meddock, who died in 1837.
The defense set up in the answer is that the complainant, on July 10, 1812, joined with her husband in the execution of a *555 deed by which the premises in which dower is claimed were conveyed, and by which deed she relinquished her right-of dower. This deed was acknowledged on July 15, 1812, and the certificate of acknowledgment is as follows : “ Came personally Abijah Med-dock and Rachel his wife, the within grantors, and the said Rachel being examined separate and apart from her husband, agreeably to the act in such case made and provided, acknowledged the above indenture to be their voluntary act.”
The only question in this .case is as to the sufficiency of this certificate. It is not, perhaps, quite as full as the one in *the case of Ruffner v. McLenan, but there is no material difference between the two. This complainant intended to release her right of dower, and we think she has effectually done it.
The bill is dismissed.
The last case now for consideration is the case of Parmelia Vattier v. Gerard R. Chesseldine.
The bill in this case was filed in 1843, and by it the complainant claims dower in the lot therein described, as the widow of Charles Vattier, who died in 1841.
The defense relied upon is, that on May 9, 1818, the complainant, together with her husband, executed a deed conveying the premises, by which deed she relinquished her right of dower. This deed was acknowledged on the day of the date of its execution, and the certificate of acknowledgment is in the following words: “Came personally, etc., Charles Vattier-and Parmelia Vattier, who, separate and apart, acknowledged the foregoing instrument to be their voluntary act.”
The certificate is certainly very informal, more so than is the certificate in either of the other cases now before us. But there can bo no doubt that this complainant intended to release her right of dower. This is manifest from the deed itself. And it was such a deed as she was by the statute authorized to make. After its execution, she went before a magistrate to acknowledge it. She did acknowledge it. She did all she could do to carry her intention into effect. And now shall the court hold that this intention was defeated on account of the informality of the certificate. That certificate shows satisfactorily to our minds that the husband and wife went together before the magistrate, and that the wife was examined separate and apart from her husband. We are bound to believe that the contents of the deed were made *556 known to the wife. It was the duty of the magistrate so to make them known, and the presumption is that this *duty was performed. The law did not require that he should certify that he had so done.
We are further satisfied, from the certificate, that the complainant did acknowledge the deed to be her voluntary act. And if voluntary, then there was no compulsion, no coercion.
Under such circumstances we can not say that the intention of the complainant to release her dower shall be defeated by any informality in this certificate of the magistrate taking the acknowledgment.
The bill is therefore dismissed.
Read, J., dissented.